1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SCOTT LEE SPANDEL,

               Petitioner,

    v.

DOUG WADDINGTON,

               Respondent.

Case No.  C04-5573RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**April 1st, 2005**

     This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4. Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Dkt. # 7).  Respondent has answered.  (Dkt. # 17). This matter is ripe for review.

<u>FACTUAL BACKGROUND</u>

     Petitioner is in the custody pursuant to a 1999 Pierce County conviction for first degree robbery.  He was sentenced to 159 months.  The Washington courts summarized the facts as follows:

> According to the testimony of Ericka Raboteau and Aaron Foushee, on May 2, 1999, Spandel, Raboteau, and Chad Hess took drugs (LSD), a backpack, some CD's, and approximately $40 from Foushee by force. They testified that Hess displayed a knife over three inches in length during the robbery and that Spandel displayed a sawed-off shotgun and kicked Foushee in the face.

> Foushee testified that the police promised they would not charge him with dealing or possessing drugs if he testified against Spandel. Raboteau testified that in exchange

for her testimony, the prosecutor reduced the first degree robbery charge against her to first degree theft. Both Foushee and Raboteau testified that they had known each other for several years and had dated in the past.

On the second day of trial, the State called Hess, who testified that Spandel was not present during the robbery. But the State impeached Hess' testimony by introducing his earlier statements to the police in which he told the police that Spandel had been present at the robbery and had brandished a fake gun. Hess testified that he initially implicated Spandel to avoid being arrested, but later, when he pleaded guilty to the robbery, he asserted that Spandel had not been at the crime scene.

Following Hess' testimony, Spandel's counsel notified the court that he could not locate two of Spandel's three alibi witnesses. He also informed the court that the third witness, Daniel Laughlin, had been served with a subpoena but was not in court and that he had been unable to contact Laughlin at work.

Spandel's counsel told the trial court that Laughlin was the only witness out of approximately a dozen potential witnesses he had interviewed who had an adequate recollection of May 2 and could corroborate Spandel's alibi. He requested that the trial court allow him to call Laughlin as the first witness the next day. The trial court offered to secure Laughlin's presence by arresting him and detaining him overnight. Spandel's counsel said he would try to contact Laughlin and inform him that he needed to appear the next day and that if he did not appear, the trial court would issue an arrest warrant.

After the state rested, Spandel testified that he was at home caring for his invalid mother on May 2. He testified that he was his mother's sole care provider from November 1998 until his arrest, that the State paid him for this service, and that no one else lived in their home during that time.

At the close of testimony that day, the trial court and the parties discussed the "witness situation" off the record. Laughlin did not testify the following day, nor did Spandel's counsel raise the subject of alibi witnesses again.

On the third day of trial, the State called Tiffany Eckles to rebut Spandel's testimony. Eckles testified that she was a paid care provider from Pierce County Human Services and shared the responsibility of caring for Mrs. Spandel with Spandel. She testified that she began caring for Mrs. Spandel in February or March 1999, that she had resided in the Spandel home since that time, and that the State had not paid Spandel to care for his mother since she became Mrs. Spandel's caregiver earlier that year.

Eckles testified that she and Spandel alternated caring for Mrs. Spandel two days on and two days off. Eckles indicated that she was not at the residence on May 12 when the police arrested Spandel, but neither counsel asked her if she was there on May 2. She also said that Spandel had contacted her and told her that she did not have to testify unless she had received a subpoena.

The prosecutor made the following closing argument:

> What is credible is that Scott Spandel went there with Chad Hess, with Ericka Raboteau. Scott Spandel had a shotgun. Chad Hess had a knife, and they, by force or threat of force, took property from Aaron Foushee, and that's a robbery.

1      Let's look finally at the testimony of the defendant. The defendant said,

2              I wasn't there. I don't know Ericka. I don't know
               Aaron. I know Chad a little bit. But I wasn't there. I
3              was busy at my State job taking care of my mother, of
               my disabled mother, cooking her breakfast, cooking her
4              lunch and helping her 24-7 every day. I am her only
               care giver. I am completely responsible for her.

5
       That was his testimony, and I submit to you that that testimony is not
6      credible.

7      And make no mistake about who bears the burden in this case. The
       State does. The defendant doesn't have any obligation whatsoever to
8      testify or present any evidence of any kind, no obligation. But once he
       does, once a defendant takes the stand, once the defendant puts on
9      evidence for your consideration, once he decides to testify, you subject
       his testimony and his evidence to the same scrutiny as the State's
10     evidence. The defendant gets the same scrutiny as the State does when
       he presents evidence.
11
       His testimony is not credible. He is not his mother's paid care giver and
12     he hasn't been all year. And he wasn't taking care of her on May 2nd.
       He wasn't there fixing her breakfast and lunch and helping her to the
13     bathroom on May 2nd. Her care giver, Tiffany Eckles, who's an
       employee, who lives on the premises, was there.
14
15     (Dkt. # 17, pages 2 through 4).

16          Petitioner had testified that on the day of the robbery he slept most of the day and got up only

17     to fix his mother breakfast and lunch. (Dkt. # 17, page 4).

18          The jury found petitioner guilty of first degree robbery and second degree assault but the

19     assault charge was vacated.  The court imposed a 75 month sentence with a 60 month consecutive

20     firearm enhancement and a 24 month non deadly weapon enhancement for a total of 159 months.

21                                   <u>PROCEDURAL HISTORY</u>

22     The state supreme court summarized the procedural history:

23     On appeal to Division Two of the Court of Appeals, Mr. Spandel argued, among
       other things, that his counsel was ineffective in failing to ask Eckles whether she was
24     working on May 2. He also claimed counsel ineffectively failed to call alibi witnesses.
       But because these claims involved matters outside the record, and because Mr.
25     Spandel presented no affidavits showing what these witnesses would have said, the
       Court of Appeals rejected the claims.

26     Mr. Spandel subsequently filed a personal restraint petition in the Court of Appeals,
       repeating his claims of ineffective assistance and adding claims of prosecutorial
27     misconduct and sentencing error. This time, he submitted affidavits from two claimed
       alibi witnesses, both of whom averred that the prosecutor had threatened to prosecute

28

them for perjury if they testified. Mr. Spandel did not present an affidavit from Eckles, however.

A panel of the Court of Appeals considered the petition on the merits and granted relief on a sentencing issue. It rejected the ineffective assistance and prosecutorial misconduct claims, however. Concerning the claim that counsel should have asked Eckles whether she was working the day of the crime, the court noted that Mr. Spandel had still not provided an affidavit showing what Eckles would have said had she been asked her whereabouts.

Mr. Spandel then filed a motion for discretionary review in this court, providing for the first time an affidavit from Eckles. In the affidavit, Eckles says that she was not working the day of the crime and was not at Mr. Spandel's residence all that day. She also avers that Mr. Spandel's mother required 24-hour care, and that Mr. Spandel was the only other person who cared for her. In light of this affidavit, I directed the State to respond to the motion for discretionary review. It has done so, and the motion is now before me for determination.

(Dkt. # 18 exhibit 4).  The state supreme court denied review on June 11th, 2003.  (Dkt # 18 exhibit 4).

This habeas petition followed and petitioner raises two issues.

1. Ineffective assistance of counsel in violation of the Sixth Amendment for his counsels failure to ask Eckles if she worked May 2nd and for failing to call alibi witnesses Hofto and Laughlin.

2. Prosecutorial misconduct for threatening Hofto and Laughlin with prosecution if they testified.

(Dkt. # 7).

## STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this

1   Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id.

2        A determination of a factual issue by a state court shall be presumed correct, and the

3   applicant has the burden of rebutting the presumption of correctness by clear and convincing

4   evidence.  28 U.S.C. §2254(e)(1).

5                          EVIDENTIARY HEARING

6        If a habeas applicant has failed to develop the factual basis for a claim in state court, an

7   evidentiary hearing may not be held in federal court unless (A) the claim relies on (1) a new rule of

8   constitutional law, made retroactive to cases on collateral review by the Supreme Court that was

9   previously unavailable, or (2) a factual predicate that could not have been previously discovered

10  through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to

11  establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder

12  would have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996).

13  Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not set forth

14  any factual basis for his claims that could not have been previously discovered or developed by due

15  diligence.  Finally, the facts underlying petitioner's claims are insufficient to establish that no rational

16  factfinder would have found him guilty of the crime. Therefore, petitioner is not entitled to an

17  evidentiary hearing.

18                              DISCUSSION

19        A.      Ineffective assistance of counsel.

20        In order to establish ineffective assistance of counsel, a petitioner must show that counsel's

21  representation fell below an objective standard of reasonableness and that the deficient performance

22  affected the result of the proceeding.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

23        Under the first prong of the Strickland test, the question is whether counsel's assistance was

24  reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct.

25  Strickland, 466 U.S. at 690.  To succeed under the first prong, the petitioner must show the

26  attorney's conduct reflects a failure to exercise the skill, judgment, or diligence of a reasonably

27  competent attorney.  United States v. Vincent, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S.

28

REPORT AND RECOMMENDATION
Page - 5

838 (1985).

Under the second prong the petitioner must demonstrate prejudice.  Strickland, 566 U.S. at 694.  However, sheer outcome determination is not sufficient to make out a Sixth Amendment violation.  A proper prejudice inquiry focuses on whether counsel's errors or omissions rendered the proceeding fundamentally unfair or the result unreliable.  Lockhart v. Fretwell, 113 S.C. 838, 842-44 (1993).

Petitioners ineffective assistance of counsel claims fail under either prong.  With regard to failing to call alibi witnesses, both parties placed before the state court the affidavit of defense counsel.  Counsel avers the petitioner told him he was present when the robbery occurred and counsel believed the calling of either alibi witness would have been unethical and suborning perjury. (Dkt. # 18 exhibit 18 and 19, affidavit of Dana Ryan).  Thus, counsels failure to call the alibi witnesses was a tactical and ethical decision and not a failure on counsels part.

The state supreme court considered counsels failure to ask Ms. Eckles if she worked the day of the robbery and held:

> To establish a claim of ineffective assistance, Mr. Spandel must show, based on the entire record, that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Mr. Spandel must overcome a strong presumption that counsel acted within the broad range of reasonable professional conduct, and must show that there was no legitimate strategic or tactical reason for the challenged conduct. Id. at 335-36. And since this is a personal restraint petition, Mr. Spandel must demonstrate he was actually and substantially prejudiced. In re Lord, 123 Wn.2d 296,303,868 P.2d 835 (1994).
>
> Mr. Spandel shows neither unreasonable conduct nor prejudice in connection with counsel's failure to ask Eckles her whereabouts on the day of the crime. Eckles had already contradicted key parts of Mr. Spandel's testimony, and counsel legitimately could have decided not to risk further damaging testimony by additional inquiry. And even if counsel knew that Eckles would testify that she was gone the day of the crime, he would have been placed in the untenable position of asking the jury to believe that part of Eckles's testimony while disbelieving or discounting the part that contradicted Mr. Spandel' testimony. Defense counsel made a reasonable tactical decision to attack the credibility of the main witnesses (who dealt in or used illegal drugs).
>
> And given the strength of the State's case and the fact that Eckles's testimony significantly impeached Mr. Spandel, there is no reasonable probability the outcome of the case would have been different had Eckles been asked her whereabouts. At best, her testimony would have lent indirect support to Mr. Spandel's claim that he was home the day of the crime, but it would not have directly accounted for his

1   whereabouts or established that he could not have been gone for the time it took to
    commit the robbery.
2
3   (Dkt. # 18 exhibit 4, pages 2 through 4).

4        Petitioner has failed to show the rulings of the state court to be contrary to or an

5   unreasonable application of clearly established federal law as determined by the Supreme Court.

6   Further, petitioner has not shown the decision was based on an unreasonable determination of the

7   facts in light of the evidence presented to the state courts. Petitioner's ineffective assistance of

    counsel claim fails.
8
9        B.    Prosecutorial misconduct.

10       The relevant question in evaluating whether prosecutorial misconduct warrants habeas relief

11  is whether the misconduct denied the defendant a fair trial. Prosecutorial misconduct would deny a

12  defendant a fair trial if the action so infected the trial with unfairness as to make the resultant

13  conviction a denial of due process. <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

14       Here, petitioner argues two alibi witnesses, Hofto and Laughlin, were contacted by the

15  prosecutor and threatened with perjury charges if they testified. (Dkt. # 7).  Both witnesses

16  presented affidavits at the state court level.  (Dkt. # 18 exhibit 19, attachments 1 and 2).  The

17  prosecutor denied having threatened either witness.  (Dkt. # 18 exhibit 18, appendix "E").

18       The court need not consider the weight of the evidence or hold an evidentiary hearing.

19  Petitioner can show no prejudice.  Defense counsel has indicated that neither witness would have

20  been called.  (Dkt. # 18 exhibit 18 and 19, affidavit of Dana Ryan).  As the witnesses would not have

21  testified, petitioner can show no prejudice.  This issue is without merit.

22                              <u>CONCLUSION</u>

23       Based on the foregoing discussion, the Court should **DISMISS** this petition as the petition

24  lacks merit. A proposed order accompanies this report and recommendation.

25       Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

26  parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.

27  R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

28  appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

1    72(b), the clerk is directed to set the matter for consideration on **April 1st, 2005**, as noted in the

2    caption.

3

4          Dated this 8th day of March, 2005.

5

6                                         /S/ *Karen L. Strombom*
                                          Karen L. Strombom
7                                         United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 8